# EXHIBIT A

Fulton County Superior Court
***EFILED***JT
Date: 8/28/2018 10:23 AM
Cathelene Robinson, Clerk

Record ID 83157

Civil Action No. 2018CV302813

Date Filed 7/31/18

Magistrate Court ☐
Superior Court ☐
State Court ☐
Georgia, Gwinnett County

Janet Hill

Plaintiff

VS.

America's Wholesale Lender

Defendant

Garnishee

Attorney's Address
Janet Hill
543 Auburn Avenue
Atlanta, GA 30312

Name and Address of party to be served.
America's Wholesale Lender
CT Corporation System
289 S. Culver St.
Lawrenceville, GA 30046

## Sheriff's Entry Of Service

Personal ☐ I have this day served the defendant ____________ personally with a copy of the within action and summons.

Notorious ☐ I have this day served the defendant ____________ by leaving a copy of the action and summons at his most notorious place of abode in this County.
Delivered same into hands of ____________ described as follows age, about ______ years; weight, about ______ pounds; height, about ______ feet and ______ inches; domiciled at the residence of defendant.

Corporation ☐ Served the defendant America's Wholesale Lender a corporation by leaving a copy of the within action and summons with Linda Banks in charge of the office and place of doing business of said Corporation in this County.

Tack & Mail ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

Non Est ☐ Diligent search made and defendant ____________ not to be found in the jurisdiction of this Court.

This 2 day of Aug, 2018.

[signature] Casey S0300
Deputy

Sheriff Docket ______ Page ______

Gwinnett County, Georgia

WHITE: Clerk CANARY: Plaintiff / Attorney PINK: Defendant

SC-2 Rev.3.13

Fulton County Superior Court
***EFILED***TAW
Date: 7/30/2018 2:37 PM
Cathelene Robinson, Clerk

SUPERIOR COURT FULTON COUNTY, GEORGIA

# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303

## SUMMONS

Janet Hill

Plaintiff,

vs.

America's Wholesale Lender, Unknown Claimants or might claim adversely to plaintiff's title

Defendant

Case No.: 2018CV302813

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb and serve upon plaintiff's attorney, whose name and address is:

Janet Hill
543 Auburn Ave
Atlanta, GA, 30312

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

This 30TH day of JULY, 20 18

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By [signature]
Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you ______________, 20____

______________
Deputy Sheriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

Fulton County Superior Court
***EFILED***DC
Date: 7/26/2018 4:23 PM
Cathelene Robinson, Clerk

**SUPERIOR COURT FULTON COUNTY**
**STATE OF GEORGIA**

**JANET HILL**

**Plaintiff,**

**v.**

**Civil Action File Number:**
**2018CV302813**

**AMERICA'S WHOLESALE LENDER,**

ALL PERSONS KNOWN OR
UNKNOWN WHO CLAIM OR
MIGHT CLAIM ADVERSELY
TO PLAINTIFF'S TITLE TO
REAL PROPERTY KNOWN AS
534 Auburn Avenue,
FULTON COUNTY, GEORGIA
**Defendants.**

**AMENDED**
**VERIFIED COMPLAINT**
*pursuant to O.C.G.A. 9-10-111*
*and O.C.G.A. 9-11-15*

**AMENDED PETITION TO ESTABLISH TITLE AGAINST ALL THE WORLD**

COMES NOW, JANET HILL, hereinafter "Plaintiff" in the above-styled action, and, pursuant to O.C.G.A. § 23-3-60, 61, et. seq., files this Petition to Establish Title Against All the World and shows the Court as follows:

**Affidavit**

I, Janet Hill, of age and competent to testify, states as follows based on my own personal knowledge:

A) I am not in receipt of any document which verifies that I have a valid contract with America's Wholesale Lender.

B) I am not in receipt of any document which verifies that I owe America's Wholesale Lender any money.

C) I am not in receipt of any document which verifies that America's Wholesale Lender is a lender in the State of Georgia.

E) I am not in receipt of any document that indicates America's Wholesale Lender is a corporation, registered to do business in the state of Georgia or the state of New York.

F) I am not in receipt of any documents that indicates America's Wholesale Lender is a lender, licensed to lend money in the state of Georgia and/or the state of New York.

D) As a result, I have been damaged financially, socially, physically and emotionally.

STATE OF INDIVIDUAL ACKNOWLEDGMENT

STATE OF: Georgia

COUNTY OF: Fulton

Before me, the undersigned, a Notary Public in and for said County and State on this 26th day of July, 2018, personally appeared to me known to be the

identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act. Given under my hand and seal the day and year last below written.
My commission expires as indicated below.

It is the understanding of the Plaintiff that Fulton County Superior Court has a lesser standard than Federal Court in determining if claims are stated where Federal Courts identify claims of merit and therefore Plaintiff is entitled to the general pleading standards as pronounced in *Conley v. Gibson* 355 US. 41, 45-46 (1957) and also *Dioguardi v. Durning*, 139 F 2d 774 (CA2 1944).

1. Plaintiff relies on *Conley v Gibson* and also *Dioguardi v Durning* as related to the general pleadings standard.

2. Plaintiff resides at 534 Auburn Avenue, Atlanta, Georgia 30312. The Superior Court of Fulton County has in rem jurisdiction over this matter pursuant to O.C.G.A. § 23-3-61. Further, venue is proper in Fulton County since it is the county in which the property at issue is situated O.C.G.A. § 23-3-62(a).

3. The land to which Plaintiff seeks to establish clear title is commonly known as 543 Auburn Avenue, Atlanta, Georgia, 30312, according to the present system of numbering houses in Fulton

County, Georgia, and is more particularly described as:

> ALL THAT TRACT or parcel of land lying and being in Land Lot 46 of the 14th District of Fulton County, City of Atlanta, Georgia, and being more particularly described as follows:
>
> BEGINNING at a point located at the intersection of the southerly side of the right of way of Auburn Avenue (55-foot right of way) and the easterly side of the right of way of Howell Street (30-foot right of way), thence running along the southerly side of said Auburn Avenue North 88 degrees 34 minutes 07 seconds East a distance of 48 00 feet to ½ inch rebar found; thence leaving the southerly side of the right of way of Auburn Avenue and running South 00 degrees 00 minutes 00 seconds East a distance of 111.50 feet to a point; thence running South 88 degrees 54 minutes 06 seconds West a distance of 40.50 feet to an ½ inch OT found on the easterly side of the right of way of said Howell Street, thence running along the easterly side of the right of way of said Howell Street North 61 degrees 02 minutes 42 seconds West a distance of 94 30 feet to the POINT OF BEGINNING

A true and correct copy is attached hereto as Exhibit "A".

4. Plaintiffs' title to the property to the above described property, who acquired title to and took possession of the property under that certain Warranty Deed dated on or about, October 6, 1999.

Fulton County records, a true and correct copy of which is attached hereto as Exhibit "A".

5. This deed is in accordance with the records of the County Tax Assessor. The records of the Tax Assessor state that the property is approximately 0.1007 acre(s).

6. A copy of the plat of survey of the parcel of land that is subject of this proceeding. Exhibit "B"

7. Plaintiff signed under duress and without legal authority or disclosure by defendant what was misrepresented as a Security Deed to American Wholesale Lender. Exhibit "C"

<u>**Claims Against America's Wholesale Lender ("AWL"):**</u>

1. Misrepresentation as to licensing with the NMLS and state financing laws.
2. Private cause of action against unlicensed members under
    a. O.C.G.A. § 7-1-1000 in Georgia.

3. Violation of NMLS for not being incorporated (non-existent entity). Exhibit D
4. O.C.G.A. §14-2-204 makes AWL was not incorporated and AWL created liabilities while so acting.

**Regulations:**

1. GRMA
2. National Mortgage Licensing System, ("NMLS").
   a. Georgia is bound by this regulation for things such as
      i. Licensing,
      ii. Bonds for lenders and servicers

## Causes of Action

1. **First Cause of Action: Fraudulent Loan Origination by AWL, violations by unlicensed lender noncompliance under the banking and other corporate statutes**
   a. Action brought for cancelation of the mortgage and other related instruments.
   b. Fraudulent inducement under the GRMA or the MMLL to protect Plaintiff from lending frauds by unlicensed and unregistered entities.
   c. Plaintiff was reliant on the good faith and fair dealings required under GRMA and by contract statutes.
   d. The fact that multiple documents fraudulent documents were presented naming AWL, shows intent and a pattern of practice to misrepresent consumers, which was somewhat widespread and contemplated.

2. **Second Cause of Action: Misrepresentations and Mischief under Banking Laws Voids the Contract Mortgagors are not Liable for the Debt**
   a. Failure to duly be licensed.
   b. Misrepresentations were made by AWL implying that it was at all times a bon fide Lender in contravention to Georgia OCGA 7-1-1000 application for a mortgage loan or a mortgagor.

c. Induced Plaintiff to sign a false document, security deed without meeting the GRMA licensing requirements in contravention to OCGA 7-1-1000.
d. Induced Plaintiff to be serviced and to make payments under false terms.
e. Failure to provide a bond for the guarantee against malfeasance in contravention to O.C.G.A. §7-1-1003.2
f. Filing or cause to file a falsified Security Deed in Fulton County, Georgia in contravention to O.C.G.A. §16-8-102 (5).
g. AWL had no exceptions from the requirement to be licensed under Georgia Residential Mortgage Act of 2006, O.C.G.A §7-1-1000 (15).
h. Breached all terms under said agreement and was not done by fair dealings OCGA §7-1-1013(6).
i. AWL engaged in fraudulent underwriting practices OCGA §7-1-1013(7).

3. **Third Cause of Action: AWL Liabilities under OCGA §14-2-204**
   a. "All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this chapter is jointly and severally liable for all liabilities created while so acting."
      i. AWL was non existent and unlicensed under the GRMA, MMLL and the NMLS.
      ii. Plaintiff allege and seek for this Court to apply the meaning of "all persons", to mean in the instant case, namely AWL.
      iii. Plaintiff question about Defendant legal duties

4. **Fourth Cause of Action: Declaratory Judgment on Fraudulent Transfer of Assets of a Non-Existent Corporation is void or in the alternative, as a matter of law**
   a. Under Georgia law, any transaction where the corporation does not have a license is illegal. That means that it is deemed to be unenforceable given to an illegal and unconscionable transaction without legal authority.
   b. Plaintiff seeks an affirmative determination that AWL transferred its purported interests in Security Deed by assignments were acquired by fraud.

5. **Fifth Cause of Action: Request to Void Mortgage Contract and Other Instruments for Violation of Public Policies**

a. Plaintiffs seek the cancelation and voiding the Security Deed and assignment in accordance with:
    i. OCGA 13-8-2 (a) A contract which is against the policy of the law cannot be enforced. Contracts deemed contrary to public policy include but are not limited to... (b) A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract... bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promise, his agents or employees, or indemnities is against public policy and is void and unenforceable.
b. Seeks cancelation of deeds along with assignments.
c. Plaintiff seeks to enjoin any Law Firms, trustees, agents, from attempting to enforce the fraudulent instruments for all purposes to bill, collect, publish and threaten to foreclose on the subject properties.

6. **Sixth Cause of Action: Slander of Title**
    a. Plaintiff seeks damages for information supplied by the purported Loan Servicers to the Credit Reporting Agencies as a tort under Georgia's law to be included under "invasion of privacy by publicity which placed Plaintiff in a false light in the public eye.
    b. OCGA §51-9-11: "The owner of property may bring an action for libelous or slanderous words which falsely or maliciously impugn title if any damage accrues to Plaintiff there from.
    c. Plaintiff have collectively sustained losses associated from the ongoing collection activities against their property.
    d. Suit against trespassing under OCGA §51-9-4.
    e. Plaintiff seek a determination to the right to know the Real Parties of Interest if any exist in accordance with OCGA 9-11-17 (a).
    f. Plaintiff allege duty from the government to protect private property owners from intruders.
    g. Plaintiff seek discovery and declaratory judgment on this matter.

7. **Breach of Contract and Wrongful Foreclosure: recovery under wrongful foreclosure for the premature acceleration.**
    a. Plaintiff contract was breached because it was made by a non-existent entity, which did not conform to any lending practices.
    b. Sent notices throughout 2009 through 2016 about Defendant legal status, but were never answered. There is a duty to answer under the mortgagor rights contained in Security Instruments Section(s) 15.

8. **Breach of Covenants for Good Faith and Fair Dealings:**
   a. Actions were not done in strict fairness due to the fraudulent contract and conveyances.
   b. Defendant is liable for inducing Plaintiff to sign secured interests over to a non-existent entity, which had no license or business location in the respective state. No license to lend, no registration to do business and no business location in the respective state.
   c. Defendant benefited from advanced payments prior to the discovery of the fraud.

1. **WHEREFORE,** Plaintiffs pray:

a. That the Court assume in rem jurisdiction against all the world to establish Plaintiff's title to the land pursuant to O.C.G.A. § 23-3-61;
b. That the Court appoint and refer this matter to a Special Master pursuant to O.C.G.A. § 23-3-63;
c. That process issue directed to all persons who are entitled to notice and to all the persons whom this action may concern, including service perfected by publication, if necessary, pursuant to O.C.G.A. § 23-3-66(b);
d. That the Court appoint a Guardian Ad Litem, pursuant to O.C.G.A. § 23-3-66(d), in the event it is determined that there are persons under a disability or minors, or persons not in being, unascertained, or unknown who may have an adverse interest;
e. That Plaintiff have a trial by jury on all issues so triable;
f. That the Court issue a decree to be recorded in the Office of the Clerk of Superior Court establishing Plaintiffs' title in the property against all the world and that all clouds to Plaintiff's title to the property be removed; and
g. That Plaintiffs have such other and further relief as may be equitable and just under the facts set out herein.

Respectfully submitted, this 26rd day of July, 2018

______________________

Janet Hill, *pro se*
543 Auburn Avenue NE
Atlanta, Georgia 30312
404-861-6036

All Rights Reserved

**Exhibit A**

CROSS REFERENCE
LN Book 2964 Page 396

GEORGIA, FULTON COUNTY
FILED AND RECORDED
1999 OCT 20 AM 8:30
JUANITA HICKS
CLERK SUPERIOR COURT

Fulton County, Georgia
Real Estate Transfer Tax
Paid $
Date 10-20-99
JUANITA HICKS
Clerk, Superior Clerk
By: Deputy Clerk

# WARRANTY DEED

GEORGIA, FULTON COUNTY

TALLEY & SHARP P.C.
1892 Ga. Hwy. 138, S.E.
Conyers, Georgia 30013

THIS INDENTURE, Made this 8th day of OCTOBER, 1998, between DAISY BENNETT FLOURNOY A/K/A DAISY LEE BENNETT FLOURNOY of the State of Georgia and County of DeKalb as party of the first part, hereinafter called GRANTOR, and JANET HILL, of the State of Georgia and County of Fulton as party of the second part, hereinafter called GRANTEE, (the words "Grantor" and "GRANTEE" to include their respective heirs, successors and assigns where the context requires or permits),

WITNESSETH: That Grantor, for and in consideration of the sum of TEN DOLLARS ($10.00) AND OTHER VALUABLE CONSIDERATIONS in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, the undersigned, DAISY BENNETT FLOURNOY A/K/A DAISY LEE BENNETT FLOURNOY does hereby grant, bargain, sold and convey and by these presents, does grant, bargain, sold and conveyed unto JANET HILL her heirs and assigns, the following described property to wit:

ALL that tract or parcel oof Land lying and being in Land Lot 46 of the 14th Distrcit of Fulton County, Georgia, being more fully described as follows:

BEGINNING at a point located at the intersection of the southerly side of Auburn Avenue and the east side of Howell Street; thence running northeasterly along the southerly side of Auburn Avenue forty-six (46) feet to a point; thence south one hundred eleven and five-tenths (111.5) feet to a point; thence west forty and five-tenths (40.5) feet to a point located on the east side of Howell Street; thence north along the east side of Howell Street ninety-four (94) feet to the point of beginning; being known as No. 543 Auburn Avenue, Atlanta, Georgia, and being more particularly shown by a plat of survey dated February 6, 1956, prepared by W.H. Brewer, Surveyor, on file in the office of Lawyers Title Insurance Corporation.

TO HAVE AND TO HOLD the said bargained premises, together with all and singular the rights, members and appurtenances thereof, to the same being, belonging or in any way appertaining, to the only proper use, benefit and behoof of the said grantees forever, IN FEE SIMPLE.

And the said Grantor will warrant and forever defend the right and title to the above described property unto the said grantee against the unlawful claims of all persons whomsoever.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year above written.

BOOK 27887PG150

Signed, sealed and delivered
in the presence of:

WITNESS

N.P. SEAL

NOTARY PUBLIC

Notary Public, DeKalb County, Georgia
My Commission Expires September [illegible]

DAISY BENNETT FLOURNOY A/K/A
DAISY LEE BENNETT FLOURNOY

BOOK 27887 PG 151

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in [illegible] BK [illegible] PG [illegible] in this office this [illegible] day of [illegible] 20 [illegible]
CATHLENE ROBINSON Clerk of Superior Court, Fulton County, GA

By ______________________ Deputy Clerk
not valid unless signed in RED ink

# Exhibit B




A1.0

SITE PLAN / COVER SHEET

the HILL RESIDENCE
543 Auburn Avenue, Atlanta GA

RICE DESIGN STUDIO

**Exhibit C**

After Recording Return To:
JANE DOCHAN
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
TERRY MILLER

(Space Above This Line For Recording Data)

114432646 (Escrow/Closing #)    00011443264610005 (Doc ID #)

# SECURITY DEED

MIN 1000157-0005914003-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 06, 2005, together with all Riders to this document.

(B) "Borrower" is
JANET HALL

Borrower is the grantor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is
AMERICA'S WHOLESALE LENDER



* 2 3 0 9 1 *    * 1 1 4 4 3 2 6 4 6 0 0 0 0 0 2 0 0 8 A *

CERTIFIED TRUE COPY
BY: [signature]

DOC ID #: 00011443264610005

Lender is a CORPORATION
organized and existing under the laws of NEW YORK . Lender's address is
P.O. Box 660694, Dallas, TX 75266-0694 .
(E) "Note" means the promissory note signed by Borrower and dated OCTOBER 06, 2005 . The Note states that Borrower owes Lender
FOUR HUNDRED SIXTY FOUR THOUSAND and 00/100

Dollars (U.S. $ 464,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 01, 2035 .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] 0 |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the
COUNTY of FULTON :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

DOC ID #: 00011443264610005

Parcel ID Number: which currently has the address of

543 AUBURN, ATLANTA
[Street/City]

Georgia 30312 ("Property Address"):
[Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns, and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #: 00022449264610003

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

DOC ID #: 00011443264610005

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to it's condition. Unless it is determined pursuant to

DOC ID #: 00011443264610005

Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

DOC ID #: 00021643264610005

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

DOC ID #: 00011443266610005

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

DOC ID #: 00011403264610005

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

STATE OF GEORGIA, County ss: Fulton

Signed, sealed and delivered in the presence of:

LESIA M. WEST NOTARY PUBLIC CARROLL COUNTY, GA

Unofficial Witness

Lesia M. West Carroll

Notary Public, County

State of Georgia

**Exhibit D**

# STATE OF GEORGIA

## Secretary of State

**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

### CERTIFICATE OF SEARCH

I, **Brian P. Kemp**, the Secretary of State of the State of Georgia, do hereby certify under the seal of my office that the automated database for business entities has been searched and that the following named entity was not found filed of record as of the date stated below:

**Americas Wholesale Lender**

This certificate is issued pursuant to Title 14 of the Official Code of Georgia Annotated and is prima-facie evidence of the existence or nonexistence of the facts stated herein.

SPECIAL NOTICE: Prior to July 1, 1988 certificates of Georgia limited partnerships were not filed with the Secretary of State but were filed with the clerks of superior court of the county of the partnership's principal place of business.

| | |
|---|---|
| Docket Number | 15405492 |
| Print Date | 02/16/2018 |
| Form Number | : 212 |

STATE OF GEORGIA 1776

B: P. K

Brian P. Kemp
Secretary of State

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served.

CT Corporation System
289 S. Culver St.
Lawrenceville, GA 30046

## VERIFICATION OF JANET HILL

Personally appeared before me, the undersigned Notary Public duly authorized to administer oaths, Janet Hill, who after being duly sworn deposes and states that she is authorized to make this verification on behalf of herself and that the facts alleged in the foregoing are true and correct based upon personal knowledge, except as to the matters herein stated to be alleged on depose and say on oath that she is the Plaintiff in the foregoing verified Petition to Establish Title Against All the World and that the facts set forth therein are true and correct to the best of her knowledge and belief, and that as to those matters she believes them to be true.

This Verification makes the foregoing document a sworn affidavit under penalty of perjury.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct based upon my personal knowledge.

This 26th day of July, 2018.

Janet Hill
*Pro Se*
534 Auburn Avenue
Atlanta, GA, 30312
(404) 861-6036
All rights reserved

Sworn to before me, this 26th day of July, 2018

Notary Public

INDIA LYNN
NOTARY
PUBLIC
Exp. May 16, 2022
COBB COUNTY, GA